IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| MICHAEL NOLAN, an individual, | |
| Plaintiff, | NO. |
| v. | COMPLAINT FOR DAMAGES |
| WEWORK COMPANIES, INC., a Washington corporation; and WEWORK MANAGEMENT, LLC, a Washington limited liability company, | |
| Defendants. | |

Plaintiff Michael Nolan brings this action against defendants WeWork Companies, Inc. and WeWork Management, LLC (collectively "WeWork" or "Defendants") for breach of contract, promissory estoppel, and negligent misrepresentation. Plaintiff alleges as follows:

**I. PARTIES**

1.1  Plaintiff Michael Nolan is an individual residing in Bellevue, King County, Washington.

1.2  Upon information and belief, Defendant WeWork Companies, Inc. is a corporation duly registered and conducting business in the State of Washington.

1.3  Upon information and belief, Defendant WeWork Management, LLC is a limited liability company duly registered and conducting business in the State of Washington.

1.4  At all relevant times hereto, Mr. Nolan was employed by one or all of the above-named defendants at WeWork's place of business in Seattle, King County, Washington.

## II. JURISDICTION AND VENUE

2.1  At all times relevant hereto, the Defendants were doing business in King County, Washington. Defendants are "employers" subject to statutes governing employment in the State of Washington.

2.2  This Court has jurisdiction over the subject matter of the complaint under RCW 2.08.010, as the amount in controversy exceeds three hundred dollars.

2.3  Jurisdiction and venue are proper in this Court pursuant to RCW 4.12.020 and RCW 4.12.025, as the Defendants do business in King County and are therefore considered residents of King County, Washington.

## III. FACTUAL BACKGROUND

3.1  Plaintiff Michael Nolan was hired by WeWork in January 2019.

3.2  Prior to joining WeWork, Mr. Nolan was employed by Google for more than eleven years.

3.3  During his time at Google, Mr. Nolan built an extensive network and skill set that aligned with WeWork's desire to build important relationships in the commercial real estate industry in the Pacific Northwest region.

COMPLAINT - 2

**DOBSON HICKS PLLC**
2150 N. 107th Street, Suite 440
Seattle, WA 98133
206.492.5183

3.4 Mr. Nolan and WeWork's Vice President of Business Development, Mr. Derek Feinman, initially interacted in September 2017.

3.5 Mr. Feinman and Mr. Nolan discussed an open role at WeWork and the potential for Mr. Nolan to fill that role. During this discussion, they determined that the role was not the right fit for Mr. Nolan.

3.6 Mr. Nolan and Mr. Feinman expanded their conversation to discuss WeWork's culture and future hiring needs. At that time, WeWork expressed interest in recruiting Mr. Nolan to join their team in some capacity.

3.7 In October 2017, WeWork invited Mr. Nolan to an all-expenses-paid business development summit in Austin, Texas. While Mr. Nolan would be attending as a representative of Google, Mr. Feinman also asked Mr. Nolan to meet with him and other WeWork senior leaders about joining WeWork.

3.8 Mr. Nolan declined WeWork's invitation due to potential conflicts of interest with his employer at the time.

3.9 In February 2018, Mr. Feinman again approached Mr. Nolan about working for WeWork. Mr. Feinman asked for Mr. Nolan's resume and requested permission to forward it to WeWork's Head of Development, Granit Gjonbalaj and WeWork's Vice President of Development, Mr. Derek Stewart.

3.10 Shortly thereafter, Mr. Stewart and Mr. Nolan spoke by phone about Mr. Nolan potentially accepting a role as a Project Management Director for WeWork.

3.11 The role was outside of Mr. Nolan's expertise at the time. However, the conversation built upon the positive rapport already established with Mr. Feinman.

3.12   In August 2018, WeWork again approached Mr. Nolan about accepting a role at the company. WeWork represented to Mr. Nolan that the role was a newly created General Manager position that would be well suited for Mr. Nolan's background and skill set.

3.13   WeWork represented to Mr. Nolan that the position would give him oversight over its Amazon account, WeWork's largest and most significant strategic enterprise relationship.

3.14   WeWork further represented that in his capacity as a General Manager, Mr. Nolan would be head of the Amazon account and would be responsible to grow the account, and to monitor and foster WeWork's interactions with Amazon, to include direct management of construction projects, site operations, and the respective WeWork teams responsible for these activities.

3.15   Mr. Nolan expressed interest in pursuing the opportunity WeWork was offering and agreed to engage in WeWork's formal interview process.

3.16   On August 24, 2018, Mr. Nolan interviewed with hiring manager Mr. Grant McGrail, who was then the Global Head of Enterprise Growth for WeWork. During this interview, Mr. McGrail explained to Mr. Nolan structure of the General Manager role and its position in the greater WeWork organization.

3.17   As explained by Mr. McGrail, the General Manager position was a senior management position with responsibility for the Amazon account, to include overseeing headcount, workflow, contracts, account revenue, budget and spending decisions, and managing operations and project management teams.

3.18 The following week, Mr. Nolan interviewed with several other senior WeWork team members.

3.19 These subsequent interviews confirmed Mr. Nolan's understanding of the General Manager position as initially represented by Mr. Mc Grail.

3.20 Specifically, on September 4, 2018, Mr. Nolan met with Ben Wood, a Seattle-based WeWork employee who led the operations team on the Amazon account.

3.21 During the interview, both Mr. Wood and Mr. Nolan acknowledged that Mr. Wood was someone who Mr. Nolan would be supervising if he accepted the General Manager role. Mr. Nolan understood that Mr. Wood had been included on the interview panel to evaluate the person who would be his future supervisor.

3.22 On September 6, 2018, Mr. Nolan spoke with Mr. Dave Fano, who was at the time WeWork's Chief Growth Officer.

3.23 During this conversation, Mr. Fano and Mr. Nolan extensively discussed the new General Manager role, its structure and purview, and Mr. Nolan's background and qualifications. This conversation was consistent with Mr. Nolan's initial conversation with Mr. McGrail and confirmed that the person in the General Manager role would have managerial oversight over the Amazon account and its support functions.

3.24 These key characteristics of the General Manager role, as represented to Mr. Nolan by WeWork senior leadership, were the only reason Mr. Nolan agreed to consider leaving his lucrative and stable position at Google to join WeWork.

3.25 On or around September 19, 2018, Mr. McGrail begin discussing formal terms and conditions of a job offer and employment contract with Mr. Nolan.

3.26 Shortly thereafter, Mr. McGrail confirmed to Mr. Nolan that WeWork was preparing an initial employment offer. At that time, Mr. Nolan began working with WeWork senior recruiter Ms. Chelsea Kovak to negotiate the impending offer.

3.27 Mr. Nolan received WeWork's initial offer of employment on October 12, 2018.

3.28 Mr. Nolan and Ms. Kovak reviewed the offer in detail on several occasions, both by phone and by email. The discussions primarily centered around the terms and conditions of the offer, as well as various structural elements of the role.

3.29 On October 17, 2018, WeWork flew Mr. Nolan to San Francisco for face-to-face meetings with Mr. McGrail. During these meetings Mr. Nolan and Mr. McGrail discussed the General Manager role and how it would function from an operational and structural standpoint. This included discussion regarding the specific teams and individuals Mr. Nolan would manage if he accepted the role.

3.30 This conversation was consistent with Mr. Nolan's initial conversation with Mr. McGrail as well as all conversations with WeWork leadership. At no time did any WeWork representative indicate that the General Manager role would not allow Mr. Nolan the opportunity to work in a senior leadership position with significant responsibility and management authority.

3.31 Mr. Nolan and Mr. McGrail were in agreement that Mr. Nolan would resume full responsibility and management over at least two teams, Operations and Project

Management, and that he would be provided with significant management autonomy, including substantial control over budget and headcount decisions.

3.32 The parties continued to negotiate regarding Mr. Nolan's compensation package through October and November 2018.

3.33 On November 27, 2018, WeWork presented a third offer to Mr. Nolan, signed by the company's Chief Operating Officer, Jennifer Berrent. Mr. Nolan signed the offer the same day.

3.34 The compensation package offered by WeWork was monetarily inferior to Mr. Nolan's compensation at Google. Mr. Nolan only accepted the offer because he believed WeWork's representations regarding the nature of the General Manager position.

3.35 Mr. Nolan, in reliance on the information provided by WeWork, believed that the General Manager position offered an opportunity to expand his professional qualifications and represented a step forward in his career.

3.36 Mr. Nolan never would have left his position Google but for the representations of WeWork and its representatives regarding the scope and nature of the General Manager position.

3.37 After accepting the offer, Mr. Nolan sent an email to Mr. McGrail to share the good news. In response, Mr. McGrail congratulated Mr. Nolan and stated in part, "…next year you may lead the relationship not just for Amazon, but for Microsoft as well."

3.38 Although Mr. Nolan was surprised that WeWork was already changing the scope of his new role, he was encouraged that WeWork had a plan to expand his management role to include another large enterprise account.

3.39 Mr. Nolan resigned his employment at Google and started in his new role at WeWork on January 14, 2019. Mr. Nolan spent the remainder of January 2019 participating in orientation, training, and on-boarding meetings at WeWork.

3.40 Throughout February 2019, Mr. Nolan was actively engaged with Amazon and Microsoft senior leaders and stakeholders. Mr. Nolan also leveraged his contacts in the Pacific Northwest region to cultivate business and landlord contacts for WeWork.

3.41 However, Mr. Nolan did not receive specific directives regarding his management purview or any other aspect of his role. Specifically, WeWork provided no guidance on headcount, budget, revenue goals, or the organizational structure that had been discussed during the recruiting process.

3.42 Mr. Wood and his counterpart, Mr. Patrick Magnifico, continued to report to their previous managers outside of Mr. Nolan's team. This was a significant departure from the explicit representations made by Mr. McGrail in October 2018, and by other WeWork senior leaders during the recruitment and onboarding process.

3.43 Nevertheless, Mr. Nolan continued to focus his attention on growing customer relationships and obtaining beneficial client engagements with Amazon and Microsoft.

3.44   WeWork also enlisted Mr. Nolan's help with developing its relationship with Google using Mr. Nolan's established connections at Google.

3.45   By March 2019 Mr. Nolan realized that he was rarely able to communicate or meet with his immediate supervisor, Mr. McGrail.

3.46   As he moved into the second quarter of 2019, Mr. Nolan became increasingly concerned by the absence of a functional management or reporting structure to support his General Manager role.

3.47   Although Mr. Nolan continued to work with Amazon and Microsoft, as well as remain engaged with Google, WeWork did not provide Mr. Nolan with a team nor the other management resources he had been promised.

3.48   When questioned about these deficiencies, Mr. McGrail offered vague platitudes. Ultimately, Mr. McGrail failed to follow through on the promise to provide Mr. Nolan with the headcount, budget, or managerial authority that had been promised to Mr. Nolan during the time WeWork was recruiting him from Google.

3.49   Nevertheless, Mr. Nolan continued to perform to the best of his ability with limited authority and an absentee manager.

3.50   During Mr. Nolan's time at WeWork, the Amazon account grew substantially. In addition, the Microsoft account began to find traction with new deals.

3.51   Both Amazon and Microsoft, as well as Google, were pleased to have Mr. Nolan as a point of contact in their business dealings with WeWork. Each viewed Mr. Nolan as a trustworthy and experienced presence amidst the haphazard execution that frequently occurred during WeWork's phase of rapid growth.

DOBSON HICKS PLLC
2150 N. 107th Street, Suite 440
Seattle, WA 98133
206.492.5183

3.52  On May 9, 2019, Mr. Nolan learned that WeWork was establishing a new "Key Accounts" group headed by Vice President Mr. Bill Schild out of WeWork's New York headquarters. Mr. Nolan was instructed to begin reporting to Mr. Schild, who would then report to Mr. McGrail.

3.53  Mr. Nolan spoke with Mr. Schild on May 10, 2019 and met him in New York on May 15, 2019. The two developed what seemed to be an initially friendly rapport.

3.54  Mr. Schild informed Mr. Nolan that he had developed a phased reorganization strategy under which the Amazon support team would eventually be centralized under Mr. Nolan as previously promised. However, these changes never materialized.

3.55  Although Mr. Nolan had been promised the opportunity to build and lead a team, including authority over budget and headcount, WeWork failed to take any steps to fulfill this promise. In fact, Mr. Nolan never had a single direct report assigned to him during his time at WeWork, nor was he provided an assistant or administrative support.

3.56  WeWork left Mr. Nolan in a position that was vague, undefined, and in no way resembled what had been promised to him during the time he was being recruited.

3.57  By June 28, 2019, Mr. Schild began to actively challenge Mr. Nolan regarding his daily work schedule and assigned tasks, despite the fact that Mr. Nolan's work had ensured a lucrative quarter for WeWork's Amazon account.

3.58   Mr. Schild expanded his scrutiny as time went on, challenging minute, irrelevant details of Mr. Nolan's work, such as business expenses that had been repeatedly approved in the past by Mr. McGrail.

3.59   From late June through July 2019, Mr. Schild engaged in a pattern of conduct in which he attempted to cast blame on Mr. Nolan for the ways in which he was performing his General Manager role for reasons that appeared subjective, arbitrary, and petty in nature.

3.60   On August 1, 2019, Mr. Nolan was brought into a meeting with Mr. Schild and informed that his employment was being terminated effective immediately.

3.61   While WeWork refused to offer an explanation for the termination, representatives explicitly stated that Mr. Nolan's conduct was not at issue.

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Contract)

4.1   WeWork made promises to Mr. Nolan that he would be afforded the opportunity to build and manage a team, including direct control over at least two teams: operations and project management.

4.2   WeWork further promised that Mr. Nolan would have management resources at his disposal, to include authority over budget and head count.

4.3   WeWork failed to provide Mr. Nolan with any management authority or assign him any direct reports.

4.4   Mr. Nolan fully performed his duties under the agreement with WeWork with the meager resources that he was actually provided.

DOBSON HICKS PLLC
2150 N. 107th Street, Suite 440
Seattle, WA 98133
206.492.5183

4.5   WeWork's promises were material to the parties' negotiations and ultimate employment agreement.

4.6   As a direct and proximate result of WeWork's failure to act in accordance with its promises, Mr. Nolan has sustained substantial damages including, but not limited to, damage to his income, reputation, financial position, stock options, stock, equity compensation, and long term compensation in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel)

4.7   WeWork made promises and representations to Mr. Nolan that he would be provided with management authority and purview as a General Manager.

4.8   WeWork reasonably expected and intended that Mr. Nolan would rely on those promises.

4.9   Mr. Nolan in fact relied on these promises and representations when deciding to leave Google and accept a position with WeWork.

4.10  WeWork violated its promises to Mr. Nolan when it failed to provide Mr. Nolan with any kind of management authority.

4.11  WeWork benefitted from Mr. Nolan's services, to include his successes with the Amazon, Microsoft, and Google accounts.

4.12  As a direct and proximate result of WeWork's conduct, Mr. Nolan has suffered damages to include without limitation, lost compensation, stock options, stock, equity compensation, long term compensation, and lost employment opportunities in a sum to be proven at trial.

### THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

4.13   WeWork provided information to Mr. Nolan in connection with its efforts to recruit him away from Google.

4.14   WeWork knew or reasonably should have known that the information it provided was false.

4.15   Mr. Nolan relied upon the information provided by WeWork in deciding to resign from Google and accept employment with WeWork to his detriment, including forfeiture of a more robust salary, more favorable benefits, and vested shares of Google stock.

4.16   As a direct and proximate result of WeWork's misrepresentation of its job offer, Mr. Nolan has suffered damages to include without limitation, lost compensation, stock options, stock, equity compensation, long term compensation, and lost employment opportunities in a sum to be proven at trial.

### V.   RELIEF REQUESTED

Plaintiff requests the following relief:

1.   Judgment in favor of plaintiff on the claims set forth above;

2.   An order awarding plaintiff's economic damages in an amount to be proven at trial;

3.   An order awarding plaintiff's compensatory damages, including non-economic damages, in an amount to be proven at trial;

4.   An award of reasonable attorneys' fees and costs; and

5.   Such other and further relief as the Court may deem just and equitable.

DATED this 3rd day of March, 2020.

        DETHLEFS SPARWASSER REICH DICKERSON, PLLC

        By   s/ Mark K. Davis
           MARK K. DAVIS, WSBA #38713
           100 Second Ave. S., Ste. 190
           Edmonds, WA 98020
           P: 425-776-1352
           F: 425-776-2467
           E: mark@detsparlaw.com
           **Attorney for Plaintiff**

        DOBSON HICKS, PLLC

        By   */s/ Aubrie D. Hicks*
           AUBRIE D. HICKS, WSBA #46446
           2150 N. 107th Street, Ste. 440
           Seattle, WA 98133
           P: 206-492-5183
           F: 206-691-8709
           E: aubrie@dobsonhicks.com
           **Attorney for Plaintiff**